## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

Shahnaz Simon  \*
1200 Steuart Street #520
Baltimore, Maryland 21230

CIVIL DIVISION

Case No.: 24-C-22-1843

*Plaintiff*  \*

Versus

Dick's Sporting Goods, Inc.
200 Industry Drive
Pittsburgh, Pennsylvania 15275  \*

    Serve On:    CSC-Lawyers Incorporating Service Company
                         7 St. Paul Street
                         Suite 820
                         Baltimore, Maryland 21202

And

Dick's Sporting Goods (AKA "Dick's-Ellicott City")
9220 Baltimore National Pike
Ellicott City, Maryland 21042

    Serve On:    Manager
                         Dick's Sporting Goods
                         9220 Baltimore National Pike
                         Ellicott City, Maryland 21042

*Defendants*  \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

1

Plaintiff Shaznaz Simon, by and through her undersigned counsel Governor Jackson, III of the Law Office of Governor Jackson, III, L.L.C. hereby sues Defendants Dick Sporting Goods, Inc. and Dick's-Ellicott City, and in furtherance of her lawsuit alleges as follows:

## PARTIES

1. Plaintiff Shaznaz Simon was at all times relevant a resident of Baltimore City, Maryland residing at 1200 Steuart Street #520, Baltimore, Maryland 21230. At all times relevant, Plaintiff identified as being an Asian-American, and further identified as having an Indian national origin[1]. As explained below, Plaintiff Simon has been injured by the Defendants' illegal acts and omissions.

2. Defendant Dick Sporting Goods, Inc. is a sporting goods retail company with its principal place of business based in Coraopolis, Pennsylvania. The company was established by Richard "Dick" Stack in 1948 and has approximately 854 stores and 50,100 employees as of March 2020. Dick's is America's largest sporting goods retailer, and is listed on the Fortune 500. In 2018, this Defendant was sued for age discrimination by at least two different people for no longer selling long guns to 18-20 year olds where legal. This Defendant is traded as a public company as a component of the S&P 400 and in 2020 realized revenue of $9.584 billion, with assets totaling $7.752 billion and total equity valued at $2.339 billion.

3. Defendant Dick's-Ellicott City is located at 9220 Baltimore National Pike Ellicott City, Maryland 21042, and is the location where the incident alleged herein took place on or about May 5, 2019. This Defendant employed agents, servants, and employees who

---

[1] Accoding to Milan Vaishnav's article in the Washington Post, "Discrimination against Indian AMericans happens more than you might think", June 20, 2021, nearly 70 percent of Indian American Muslim women reported experiences with discrimination, with discrimination based on skin color identified as the most common form of bias, based on the results of the Indian American Attitudes Survey, an empirical study based on a nationally representative online survey conducted in September 2020 of 1,200 Indian American residents in the United States.

2

proximately caused injury to the Plaintiff-including mental and emotional pain and suffering, including proximately causing Plaintiff's diagnosed anxiety and post traumatic stress disorder, and past, present, and future medical care and treatment, lost wages, and other economic and non-economic damages. This Defendant and its agents, servants, and employees were otherwise negligent, and engaged in intentional acts and or omissions.

## JURISDICTION

4. This Court has subject matter over this dispute pursuant to §4-402 of the Courts and Judicial Proceedings Article of the Maryland Annotated Code. The amount in controversy exceeds the jurisdictional amount for the Circuit Court of Baltimore City, Maryland, of over $30,000.

5. This Court has personal jurisdiction over the Plaintiff and Defendants pursuant to §6-102(a) and §6-103(b)(1)-(3) of the Maryland Annotated Code, Courts and Judicial Proceedings Article.

## VENUE

6. Venue is proper in Baltimore City, Maryland pursuant to §6-202 (3) of the Court and Judicial Proceedings Article of the Maryland Annotated Code given that corporate Defendant Dick's Sporting Goods, Inc. has no principal place of business in the State, and given that the Plaintiff resides in Baltimore City, Maryland.

## FACTS COMMON TO ALL COUNTS

7. Plaintiff incorporates by reference paragraphs 1-6 as though fully stated herein.

8. On or about May 5, 2019, at approximately 5:00 p.m., Plaintiff visited the Dick's Sporting Goods located in Ellicott City, Maryland[2] for the purpose of purchasing a firearm for

---

[2] U.S. News & World & Report ranked Maryland as the fourth most diverse state in the county with a diversity index of 67.3%. A diversity index is a quantitative measure that reflects how many different types there are in a dataset, and that can simultaneously take into account the phylogenetic

3

home protection as well as recreational hunting. When Plaintiff entered the store, she approached the Lodge Department where firearms were being displayed and sold. When she arrived in the Lodge Department, there was a line of customers in which Plaintiff was third in line. There were also customers in line behind the Plaintiff.

9. When it was the Plaintiff's turn to approach the counter, Lodge Manager Patty Anderson (White female) was at the register and refused to call the Plaintiff forward to the counter to provide her service. Instead, Ms. Anderson glared angrily at the Plaintiff, pointed at her and told her while snapping her fingers to "move your black ass over!" After making this exclamation, Ms. Anderson motioned to the White customer in line behind the Plaintiff and motioned for them to approach the register, greeting the White customer enthusiastically when they approached the counter. After assisting the White customer, Ms. Anderson again motioned to another White customer in line behind the Plaintiff and motioned for them to approach the register, also greeting them enthusiastically when they approached the counter. Meanwhile, during these two transactions, stood at the front of the line, bewildered, shocked, and upset that she was being ignored.

10. After waiting approximately 20 minutes for the other transactions to conclude, Ms. Anderson motioned to the Plaintiff, without looking up, making eye contact, or providing any salutary or enthusiastic greeting. When Plaintiff Simon approached the counter, Ms. Anderson angrily asked Plaintiff, "Are you Arab? Are you Black?" Plaintiff responded, "I'm Arab, why does it matter?" Ms. Anderson responded, "Because your hair, it's like a black girl's hair. If you're not Black, why do you have that hairstyle[3]?" Then, another employee, Jeff [last name unknown] (White male) immediately came over to the section of the counter where Ms. Anderson and

---

relations among the individuals distributed among those types, such as richness, divergence, or evenness.

[3] At the time of the incident, Plaintiff adorned a braided hairstyle and her hair color was black.

4

Plaintiff Simon were standing across from one another. At that time, Plaintiff explained that she wanted to purchase a gun for home protection as well as recreational hunting. Plaintiff also said that she met all of the qualifications under Maryland State law to make the purchase.

11. In response, Jeff and Ms. Anderson both told the Plaintiff that they were not going to sell her a firearm, but did not provide any reason for the position. They both also repeatedly directed to the Plaintiff to "go get some training." Despite their resistance, Plaintiff pleaded for the paperwork necessary to execute for the purposes of performing a background check. In response, John retrieved the paperwork and threw it across the counter at the Plaintiff and said, "Have you done any drugs this past year because if you have, I can tell you right now, you're not getting a gun!" Plaintiff, confused and embarassed still as to the purpose and immediacy of the question, responded that she had not taken any illegal substances.

12. After being thrown the application, Plaintiff properly executed the documents and provided them back to Jeff. Both Jeff and Ms. Anderson then left Plaintiff at the counter. After approximately fifteen minutes, Ms. Anderson returned and told the Plaintiff that her background check came back "in a pending status." Ms. Anderson then told Plaintiff, "It comes up as pending when you are on a terrorist list!" She then demanded that Plaintiff leave the store, and that she [Ms. Anderson] would call the Plaintiff the next day to let her know about the results of the background check.

13. On or about May 6, 2019, without having heard from Ms. Anderson, Plaintiff reluctantly took the initiative of going back to the store to determine the status of her background check. When she entered the store, fearful and emotional from her prior experience, she proceeded back to the counter where Ms. Anderson was located assisting other White customers who were present. Also present were other store employees appearing to be engaged in a training session

wherein they shadow managerial employees- all of whom were within earshot of Plaintiff and Ms. Anderson. When Plaintiff approached the counter after waiting in line, Ms. Anderson, without any justification or prior provocation, angrily scolded to Plaintiff that her and Jeff decided that they were uncomfortable around her, and further explained that as a result, they canceled Plaintiff's application that morning prior to Plaintiff's arrival even though the background application was approved. Plaintiff then requested contact information for the corporate office, to which Ms. Anderson responded in the presence of other White customers "I don't have to give your Arab ass anything! It's my prerogative!"

14. Plaintiff then stated that she would go to another Dick's store if she [Ms. Anderson] continued to refuse to provide her the requested corporate information and consummate the sell of the firearm given that she passed the background check. Ms. Anderson then responded "You can't! I've banned you from every Dick's in the state and told them not to sell you a gun!" Meanwhile, Ms. Anderson continued assisting other White customers who were present purchasing firearms.

15. Plaintiff then left the store crying, distraught, embarrassed, humiliated, angry and distressed. Later that same day, she went to another firearm retail outlet and was able to consummate the purchase of a firearm within 48 hours.

16. As a result of Plaintiff's experience at Dick's Sporting Goods-Ellicott City, Plaintiff sought professional mental health treatment during which she was clinically diagnosed with anxiety, depression, and post traumatic stress disorder as a result of her horrid, traumatic, humiliating and racist customer service experience. Plaintiff continues to suffer from physical, mental, and emotional manifestations of her diagnoses, including but not limited to suffering from anxiety-induced grand mal seizures and weight loss.

## COUNT I- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

17. Plaintiffs incorporate by reference paragraphs 1-16 as though fully stated herein.

18. By engaging in hostile and blatant racial disrimination and malicious animus, Defendants and their agents, servants, and employees engaged in conduct which was intentional, reckless, racist, xenophobic, and in deliberate disregard of a high degree of probability that public humiliation, embarrassment, and emotional distress would result to the Plaintiff. This is particularly so since the Defendants' agents, servants, and employees were aware that Plaintiff was not engaged in any suspected or active criminal activity and further did not make any threatening gestures or remarks suggesting a propensity for the Plaintiff to become violent. Thus, the conduct exhibited by these Defendants and their agents, servants, and employees was racist, extreme, and outrageous and went beyond all possible bounds of decency, was atrocious, and would be considered utterly intolerable in a civilized community.

19. The conduct of the Defendants and their agents, servants, and employees proximately caused or contributed to the severe emotional distress of the Plaintiff, including Plaintiff's anxiety, sleeplessness, panic, and fear, post-traumatic stress disorder, and other emotional manifestations of the malicious and excessive humiliation by the Defendants' agents, servants, and employees. Furthermore, as a result of said conduct by these Defendants, Plaintiff has suffered, and will continue to suffer severe and extreme emotional distress. These Defendants' agents, servants, and employees were acting within the scope of their employment, as their employer had control over their hiring, work schedule, credentialing, and performance of their professional duties. Furthermore, these acts were carried out by the Defendants' agents, servants, and employees while wearing uniforms and identifying clothing affiliated with Dick's Sporting Goods, Inc. and Dick's-Ellicott City leading Plaintiff to believe that they were acting as agents of these Defendants.

7

20. WHEREFORE, Plaintiff demands judgment against the named Defendants, jointly and severally, for compensatory damages of one million dollars ($1,000,000) with interest and costs, and further demands one million dollars ($1,000,000) in punitive damages with interest and costs, and any other relief to which this Court finds the Plaintiff is entitled.

## COUNT II- NEGLIGENCE

21. Plaintiff incorporates by reference paragraphs 1-20 as though fully stated herein.

22. The duty and standard of care in these circumstances required that prudent, reasonable retail employees possessing that degree of skill and knowledge which is ordinarily possessed by those who devote professional time and attention to carrying out the duties of retail employees properly prevent injury, blatant racism, and harm from being inflicted. The Defendants and their agents, servants, and employees breached this duty and standard of care in that they caused harm to the Plaintiff given (i) there being no reasonable articulable suspicion or probable cause that criminal activity was afoot in the presence of the Defendants' agents, servants, or employees, (ii) the Defendants' agents, servants, and employees' failure to witness the Plaintiff engage in any illegal conduct or verify any concerning background conduct which would warrant voiding the sale of a firearm to the Plaintiff, (iii) the Defendants' agents, servants, and employees' discriminatory and racial conduct exhibited their remarks and by giving preferential treatment to White customers, (iv) the Defendants' malicious banning of the Plaintiff' from the Defendants' property and database thereby proximately causing Plaintiff humiliation, embarrassment, inconvenience, and mental injuries without any legal basis or justification, with malice aforethought, (v) the racist, threatening, verbal abuse of the Plaintiff, (vi) the otherwise unjustified refusal by the Defendants' agents, servants, and employees of the sale of a firearm to the Plaintiff,

and (vii) the Defendants' agents, servants, and employees' blatant, wanton, willful and intentional disregard of store standards, policies and procedures dictating the proper sale of a firearm. Furthermore, Defendants, and their agents, servants, and employees by their negligent acts and omissions, showed a racist, reckless disregard for the personal integrity of the Plaintiff and the Plaintiff's race, color, creed, and national origin. These Defendants and their agents, servants, and employees had a duty to act reasonably and with prudence under like circumstances and failed to do so.

23. These failures and breaches of the applicable duty and standard of care by these Defendants and their agents, servants, and employees constituted negligence, and proximately caused or contributed to Plaintiff's damages including, but not limited to, Plaintiff's anxiety, sleeplessness, panic, and fear, post-traumatic stress disorder, other physical, mental, and emotional manifestations of the malicious and excessive humiliation by the Defendants' agents, servants, and employees, permanent and debilitating pain and suffering, mental distress, and other economic and non-economic damages.

24. WHEREFORE, Plaintiff demands judgment against the named Defendants, jointly and severally, for compensatory damages of one million dollars ($1,000,000), with interest and costs, and any other relief to which this Court finds the Plaintiff is entitled.

## COUNT III-NEGLIGENT HIRING AND RETENTION

25. Plaintiff incorporates paragraphs 1-24 as though fully stated herein.

26. Defendants had a duty to use reasonable care to select agents, servants, and employees who were competent and fit to perform the duties of a retail customer representative, free of bias and prejudice when interacting with the public within the scope of their employment with Defendants. A reasonable and prudent employer would not have ignored the need for

sensitivity training for its agents, servants, and employees responsible and tasked with interacting with members of the public in what then was considered one of the most diverse states of the United States. Defendants knew, or should have known, that their agents, servants, and employees would be likely to be in contact with members of the public. Plaintiff Simon was a member of the public and it would be foreseeable that she would come into contact with Defendants' agents, servants, and employees. Therefore, Defendants and their agents, servants, and employees, owed such a duty to Plaintiff Simon, and such duty was breached.

27. These Defendants' breach of this duty in hiring and retaining Jeff and Ms. Anderson proximately caused Plaintiff's damages including, but not limited to, Plaintiff's anxiety, sleeplessness, panic, and fear, post-traumatic stress disorder, other physical, mental, and emotional manifestations of the malicious and excessive humiliation by the Defendants' agents, servants, and employees, permanent and debilitating pain and suffering, mental distress, and other economic and non-economic damages.

28. WHEREFORE, Plaintiff demands judgment against the named Defendants, jointly and severally, for compensatory damages of one million dollars ($1,000,000) with interest and costs, and any other relief to which this Court finds the Plaintiff is entitled.

Respectfully submitted,

/s/ Governor E. Jackson, III
Law Office of Governor Jackson, III, LLC
400 E. Joppa Road, Suite 50
Towson, Maryland 21286
(410) 528-5150
(410) 528-1055 (f)
gjackson@governorjacksonlaw.com
CPF #0412140364

*Attorney for Plaintiff*

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

Shahnaz Simon  *
1200 Steuart Street #520
Baltimore, Maryland 21230

                                                    Case No.: 24-C-22-001843 OT

*Plaintiff*  *

Versus

Dick's Sporting Goods, Inc., et al.
200 Industry Drive
Pittsburgh, Pennsylvania 15275  *

*Defendants*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### REQUEST FOR JURY TRIAL

Plaintiff hereby requests that all claims set forth in her Complaint be tried before a jury.

                      Respectfully submitted,

                      /s/ Governor E. Jackson, III
                      Law Office of Governor Jackson, III, LLC
                      400 E. Joppa Road, Suite 50
                      Towson, Maryland 21286
                      (410) 528-5150
                      (410) 528-1055 (f)
                      gjackson@governorjacksonlaw.com
                      CPF #0412140364

                      *Attorney for Plaintiff*