IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SHAHNAZ SIMON** | * | |
| **Plaintiff** | * | |
| vs. | * | Civil Action No. JKB-22-1238 |
| | * | |
| **DICK'S SPORTING GOODS, INC., ET AL.** | * | |
| **Defendant** | * | |

\*\*\*\*\*\*

## MEMORANDUM

Plaintiff Shahnaz Simon brought this action against Dick's Sporting Goods, Inc. ("DSG") and "Dick's Sporting Goods (AKA 'Dick's-Ellicott City')" in the Circuit Court for Baltimore City, Maryland asserting three state law tort claims stemming from an alleged incident in which she attempted to purchase a firearm from a Dick's Sporting Goods store. (Compl., ECF No. 3.) DSG removed the case to this Court on the basis of diversity jurisdiction and filed a Partial Motion to Dismiss, which seeks to dismiss Counts II and III of the Complaint. (Notice of Removal, ECF No. 1; Partial Mot. Dismiss, ECF No. 11.) DSG's Motion is now ripe and no hearing is required for its disposition. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, the Partial Motion to Dismiss (ECF No. 11) will be granted.

### I.  *Background*[1]

Simon is an Asian-American woman of Indian national origin. (Compl. ¶ 1.) On or about May 5, 2019, she went to the Dick's Sporting Goods store located in Ellicott City, Maryland to

---

[1] At the motion to dismiss stage, the Court "accept[s] the well-pled allegations of the complaint as true" and "construe[s] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (citing *Little v. Fed. Bureau of Investigation*, 1 F.3d 255, 256 (4th Cir. 1993)).

purchase a firearm. (*Id.* ¶ 8.) Simon waited in line at the "Lodge Department" where firearms are sold, which was being staffed by the Lodge Manager, Patty Anderson, a white female. (*Id.* ¶¶ 8–9) When Simon reached the front of the line, Anderson "refused to call [Simon] forward to the counter to provide her service." (*Id.* ¶ 9.) Anderson instead "glared angrily at [Simon], pointed at her and told her while snapping her fingers to 'move your [B]lack ass over!'" (*Id.*) Anderson then assisted the two customers behind Simon, who were both white, "greeting them enthusiastically when they approached the counter." (*Id.*) After about twenty minutes, Anderson motioned to Simon and, when Simon approached, Anderson "angrily asked [Simon], 'Are you Arab? Are you Black?'" (*Id.* ¶ 10.) She also made a comment about Simon's hair, which Anderson described as "like a [B]lack girl's hair." (*Id.*)

Another employee, a white male named Jeff,[2] joined Anderson at the counter and they both told Simon "that they were not going to sell her a firearm[.]" (*Id.* ¶¶ 10–11.) When Simon requested the paperwork to complete the necessary background check, Jeff "threw [the paperwork] across the counter at [Simon] and said, 'Have you done any drugs this past year because if you have, I can tell you right now, you're not getting a gun!'" (*Id.* ¶ 11.) This question made Simon feel "confused and embarrassed[.]" (*Id.*) Simon completed the paperwork and both employees left the counter for approximately fifteen minutes. (*Id.* ¶ 12.) When they came back, Anderson told Simon that "her background check came back 'in a pending status[,]'" which Anderson said happens "when you are on a terrorist list!" (*Id.*) Anderson "demanded" that Simon leave the store and told her she would call her the next day with the result of the background check. (*Id.*)

The next day, Simon had not heard from Anderson and returned to the store to inquire about the status of the background check. (*Id.* ¶ 13.) Anderson was working at the counter again.

---

[2] This employee's last name is unknown. (Compl. ¶ 10.) The Complaint, seemingly inadvertently, also refers to this employee as John at one point. (*Id.* ¶ 11.)

(*Id.*) When Simon approached the counter, Anderson "angrily scolded" Simon, telling her that "[she] and Jeff decided that they were uncomfortable around [Simon]" and therefore "canceled [Simon's] application . . . even though the background application was approved." (*Id.*) When Simon requested contact information for the corporate office, Anderson responded, "I don't have to give your Arab ass anything!" (*Id.*) Simon replied that she would go to a different Dick's Sporting Goods location; Anderson responded, "You can't! I've banned you from every Dick's in the state and told them not to sell you a gun!" (*Id.* ¶ 14.)

Simon "left the store crying, distraught, embarrassed, humiliated, angry[,] and distressed." (*Id.* ¶ 15.) She successfully completed the purchase of a firearm from a different retailer within forty-eight hours. (*Id.*) Simon "sought professional mental health treatment" because of the alleged incident and "was clinically diagnosed with anxiety, depression, and post[-]traumatic stress disorder" as a result of the experience. (*Id.* ¶ 16.) She "continues to suffer from physical, mental, and emotional manifestations of her diagnoses, including but not limited to suffering from anxiety-induced grand mal seizures and weight loss." (*Id.*)

Simon asserts claims for intentional infliction of emotional distress ("IIED") (Count I), negligence (Count II), and negligent hiring and retention (Count III). (*See generally id.*) She seeks $1,000,000 in compensatory damages on each of the three Counts and $1,000,000 in punitive damages on Count I. (*Id.* ¶¶ 20, 24, 28.) DSG moved to dismiss Counts II and III for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Partial Mot. Dismiss, ECF No. 11.)

## *II. Jurisdiction*

As a preliminary matter, although Simon has not moved to remand the case to state court, the Court will address the issues raised in DSG's Notice of Removal to assure itself that it has jurisdiction to hear this matter.

An action brought in a state court may be removed only if the district court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). The federal diversity jurisdiction statute provides that district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states[.]" 28 U.S.C. § 1332(a)(1). With certain exceptions, diversity jurisdiction "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). For purposes of diversity jurisdiction, "a corporation is a citizen of the states in which it has been incorporated and in which it has its principal place of business." *Id.* at 102.

To establish complete diversity, DSG pleads that Simon is a citizen of the State of Maryland, whereas DSG is a Delaware corporation with its principal place of business in Pennsylvania. (Notice Removal, ECF No. 1 ¶¶ 7–8.) DSG further asserts that "[t]here is no entity named Dick's-Ellicott City registered with the Maryland State Department of Assessments and Taxation" and argues that "a retail location of a corporation" cannot "be considered a separate entity for the corporation for diversity purposes"; therefore, DSG argues, Dick's-Ellicott City should be disregarded in determining diversity. (*Id.* ¶¶ 9–12.) Simon does not contest this representation.[3]

The Court concludes that Dick's-Ellicott City, an individual retail location of the DSG

---

[3] In the Complaint, Simon merely alleges that "Defendant Dick's-Ellicott City is located at 9220 Baltimore National Pike[,] Ellicott City, Maryland 21042, and is the location where the incident alleged herein took place[.]" (Compl. ¶ 3.) Simon does not further address this issue in her briefing.

4

corporation, is not a legal entity with the capacity to be sued. It will therefore dismiss Dick's Ellicott-City as a defendant and, because complete diversity exists between Simon and DSG, the Court has jurisdiction. *Cf. Holt v. Food Lion Grocery Store of Chester*, Civ. No. 18-503, 2019 WL 112788, at *4, *1 (E.D. Va. Jan. 4, 2019) (denying motion to remand case removed to federal court based on diversity jurisdiction where local store of grocery chain was "not a legal entity" and remaining defendants were diverse); *Hunter v. Bd. of Directors of Robert Half Int'l, Inc.*, Civ No. 09-448, 2009 WL 10687961, at *7 (E.D. Va. Sept. 16, 2009) (dismissing claims against board of directors defendant that was neither an individual nor a corporation and lacked capacity to be sued under Virginia law, where corporation itself was also named as a defendant).[4]

### III. *Motion to Dismiss*

The Court now turns to DSG's Partial Motion to Dismiss, which seeks to dismiss Counts II and III of the Complaint. For the reasons stated below, the Court concludes that Simon has failed to state a claim for both negligence and negligent hiring and retention and, accordingly, will grant DSG's Partial Motion to Dismiss. Therefore, the only claim that remains is the IIED claim, which DSG did not move to dismiss.

#### A. *Legal Standard*

"In considering a motion to dismiss" pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff."

---

[4] DSG invokes the doctrine of fraudulent joinder, under which a district court may "disregard, for jurisdictional purposes, the citizenship of certain non[-]diverse defendants, assume jurisdiction over a case, dismiss the non[-]diverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999); *see also id.* at 461 n.8 (noting the term "fraudulent joinder" is "misleading" because the doctrine does not require a showing of fraud and applies equally to defendants originally included in the complaint). The doctrine applies where the removing party can show either "outright fraud in the plaintiff's pleading of jurisdictional facts or that there is *no possibility* that the plaintiff would be able to establish a cause of action against the [non-diverse] defendant in state court." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (alterations in original) (quotations omitted). The Court declines to reach this issue because "[w]hether or not evaluated under the rubric of fraudulent joinder, the naming of a nonexistent entity cannot destroy diversity." *Taylor v. Piggly Wiggly of Bay Minette, Ala.*, Civ. No. 12-0320-W, 2012 WL 3555576, at *3 (S.D. Ala. Aug. 16, 2012).

*Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

### B. Negligence

To plead a claim for negligence under Maryland law, the plaintiff must allege: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the defendant's breach of the duty proximately caused the loss or injury suffered by the plaintiff, and (4) that the plaintiff suffered actual loss or injury." *Troxel v. Iguana Cantina, LLC*, 29 A.3d 1038, 1049 (Md. Ct. Spec. App. 2011). In a negligence claim, "duty" is defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Todd v. Mass Transit Admin.*, 816 A.2d 930, 933–34 (Md. 2003) (quoting *Muthukumarana v. Montgomery Cnty.*, 805 A.2d 372, 395 (Md. 2002)). "[T]he existence of a legal duty is a question of law to be decided by the court." *Troxel*, 29 A.3d at 1049 (quoting *Corinaldi v. Columbia Courtyard, Inc.*, 873 A.2d 483, 489 (Md. Ct. Spec. App. 2005)).

Simon avers that DSG has a duty to act in accordance with the "standard of care during the sale of a firearm" and the "standard of care governing retail transactions involving members of the Public" as well as with its "own store standards, policies, and procedures." (Memo. Supp. Opp'n Partial Mot. Dismiss, ECF No. 12-1, at 3; *see also* Compl. ¶ 22 (describing standard of care of

"prudent, reasonable retail employees possessing that degree of skill and knowledge which is ordinarily possessed by those who devote professional time and attention to carrying out the duties of retail employees [to] properly prevent injury, blatant racism, and harm from being inflicted").) However, Simon has cited no authority either directly or indirectly supporting the existence of such a legal duty, and the Court is aware of none. *Cf. M.R. by & through N.R. v. Tajdar*, Civ. No. TDC-17-3836, 2018 WL 6050888, at *7 (D. Md. Nov. 19, 2018) (dismissing claim for negligence because "a violation of the provisions of the ADA barring discrimination in public accommodations does not create a duty of care that could support a negligence claim under Maryland law").[5] Absent "a legally recognized duty owed by the defendant to the plaintiff or to a class of persons of which [she] is a member," Simon cannot "sustain[ ] a cause of action in negligence." *Muthukumarana*, 805 A.2d at 395 (brackets omitted) (quoting *Valentine v. On Target, Inc.*, 727 A.2d 947, 949 (1999)). Accordingly, Simon has failed to state a claim for negligence and Count II will be dismissed without prejudice.

### C. *Negligent Hiring and Retention*

Under Maryland law, "[w]here an employee is expected to come into contact with the public[,]" an employer has a duty to "use reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee." *Doe v. Cmty. Coll. of Baltimore Cnty.*, Civ. No. ELH-21-180, 2022 WL 971079, at *19 (D. Md.

---

[5] Plaintiff is correct that the cases DSG cites do not necessarily preclude her theory of negligence. (*See* Memo. Supp. Partial Mot. Dismiss at 4–5 (citing *Braxton v. Domino's Pizza LLC*, Civ. No. RDB 06-1191, 2006 WL 3780894 (D. Md. Dec. 21, 2006) and *Bishop v. Bd. of Educ. of Calvert Cnty.*, Civ. No. DKC 11-1100, 2011 WL 2651246 (D. Md. July 5, 2011), *aff'd sub nom. Bishop v. Bd. of Educ. for Calvert Cnty. Pub. Sch.*, 466 F. App'x 261 (4th Cir. 2012)); Memo. Supp. Opp'n Mot. Dismiss at 3–5.) In both of these cases, the court dismissed claims of negligent supervision or retention based on alleged *employment* discrimination because such claims must be predicated on an employee's conduct that is actionable under common law, and "there is no common law tort for discrimination on the basis of race in Maryland." *Braxton*, 2006 WL 3780894, at *5; *Bishop*, 2011 WL 2651246, at *11. However, that Plaintiff's theory of negligence under Count II is distinguishable from these cases does nothing to establish the existence of a legally recognized duty that could sustain a claim for negligence.

Mar. 30, 2022) (quoting *Evans v. Morsell*, 395 A.2d 480, 484, 483 (Md. 1978)). To state a claim for negligent hiring and retention based on an employee's alleged intentional tort—here, IIED—Simon must plead:

> (1) [that] her injury was caused by the tortious conduct of an employee; (2) that the employer knew or should have known by the exercise of diligence and reasonable care that the employee was capable of inflicting harm of some type; (3) that the employer failed to use proper care in selecting, supervising, or retaining that employee; [and] (4) . . . that the employer's breach of its duty was the proximate cause of the Plaintiff's injuries.

*Taylor v. MGM Resorts Int'l, LLC*, Civ. No. DKC 21-3192, 2022 WL 2971955, at *5 (D. Md. July 27, 2022) (quoting *Doe*, 2022 WL 971079, at *19).

Assuming at this point in the litigation that the conduct underlying Simon's remaining IIED claim could support a claim for negligent hiring and retention, Simon has nevertheless failed to plead all of the required elements. Simon alleges that:

> Defendants had a duty to use reasonable care to select agents, servants, and employees who were competent and fit to perform the duties of a retail customer representative, free of bias and prejudice when interacting with the public within the scope of their employment with Defendants. A reasonable and prudent employer would not have ignored the need for sensitivity training for its agents, servants, and employees responsible and tasked with interacting with members of the public in what was then considered one of the most diverse states in the United States. Defendants knew, or should have known, that their agents, servants, and employees would be likely to be in contact with members of the public. Plaintiff Simon was a member of the public and it would be foreseeable that she would come into contact with Defendant's agents, servants, and employees. Therefore, Defendants and their agents, servants, and employees, owed such a duty to Plaintiff Simon, and such duty was breached.

(Compl. ¶ 26.) Fatally, Simon does not allege that DSG "knew or should have known" that its employees were capable of inflicting the alleged harm. *See Taylor*, 2022 WL 2971955, at *5 (dismissing claims for negligent hiring, training, supervision, and retention where the plaintiff did "not adequately allege[ ] that Defendants 'knew or should have known' that [its employee] was capable of defaming members of the public"). Further, although Simon alleges that "a reasonable

8

and prudent employer would not have ignored the need for sensitivity training," she does not specifically allege that DSG failed to provide such training or provide any other factual content as to how DSG failed to use proper care in selecting and retaining its employees. Accordingly, Simon has failed to state a claim for negligent hiring and retention and Count III will be dismissed without prejudice.

### IV. Conclusion

For the foregoing reasons, an Order will issue granting Defendant DSG's Partial Motion to Dismiss (ECF No. 11) without prejudice, dismissing Counts II and II, and dismissing Defendant Dick's-Ellicott City. Accordingly, the only remaining claim is the IIED claim against DSG.

DATED this 4 day of November, 2022.

BY THE COURT:

James K. Bredar
Chief Judge