IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

Shahnaz Simon                                            *
1200 Steuart Street #520
Baltimore, Maryland 21230

                                                                                Case No.: 1:22-cv-01238-JKB

            *Plaintiff*                                          *

Versus

Dick's Sporting Goods, Inc., et. al
200 Industry Drive
Pittsburgh, Pennsylvania 15275            *
*************************************************************************************

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

      Plaintiff Shahnaz Simon, by and through her undersigned counsel, files this Opposition in response to Defendant's Motion for Judgment on the pleadings, and in furtherance of her response states as follows:

*Factual Background*

      Defendant's reiteration of the facts in the case as recited in their motion conspicuously omit the vile and offending behavior that buttresses Plaintiff's remaining claim of the intentional infliction of emotional distress as pled in the complaint. To be sure, this case is not merely about poor customer service akin to long wait times in line or an incorrectly fulfilled online order, but rather the public expression of racist, xenophobic comments said with the intent to dehumanize, embarrass, offend, and inflict emotional wounds incapable of healing themselves. Specifically, the Complaint states at paragraphs 9 -14:

1

"9. When it was the Plaintiff's turn to approach the counter, Lodge Manager Patty Anderson (White female) was at the register and refused to call the Plaintiff forward to the counter to provide her service. Instead, Ms. Anderson glared angrily at the Plaintiff, pointed at her and told her while snapping her fingers to "move your black ass over!" After making this exclamation, Ms. Anderson motioned to the White customer in line behind the Plaintiff and motioned for them to approach the register, greeting the White customer enthusiastically when they approached the counter. After assisting the White customer, Ms. Anderson again motioned to another White customer in line behind the Plaintiff and motioned for them to approach the register, also greeting them enthusiastically when they approached the counter.. Meanwhile, during these two transactions, stood at the front of the line, bewildered, shocked, and upset that she was being ignored.

10. After waiting approximately 20 minutes for the other transactions to conclude, Ms. Anderson motioned to the Plaintiff, without looking up, making eye contact, or providing any salutary or enthusiastic greeting. When Plaintiff Simon approached the counter, another employee, Jeff [last name unknown] (White male) immediately came over to the section of the counter where Ms. Anderson and Plaintiff Simon were standing across from one another. At that time, Plaintiff explained that she wanted to purchase a gun for home protection as well as recreational hunting. Plaintiff also said that she met all of the qualifications under Maryland State law to make the purchase.

11. In response, Jeff and Ms. Anderson both told the Plaintiff that they were not going to sell her a firearm, but did not provide any reason for the position. They both also repeatedly directed to the Plaintiff to "go get some training." Despite their resistance, Plaintiff pleaded for the paperwork necessary to execute for the purposes of performing a background check. In response, John retrieved the paperwork and threw it across the counter at the Plaintiff.

12. After being thrown the application, Plaintiff properly executed the documents and provided them back to Jeff. Both Jeff and Ms. Anderson then left Plaintiff at the counter. After approximately fifteen minutes, Ms. Anderson returned and told the Plaintiff that her background check came back "in a pending status." Ms. Anderson then demanded that Plaintiff leave the store, and that she [Ms. Anderson] would call the Plaintiff the next day to let her know about the results of the background check.

13. On or about May 6, 2019, without having heard from Ms. Anderson, Plaintiff took the initiative of going back to the store to determine the status of her background check. When she entered the store, she proceeded back to the counter where Ms. Anderson was located assisting other White customers who were present. When Plaintiff approached the counter after waiting in line, Ms. Anderson, without any justification or prior provocation, angrily scolded to Plaintiff that her and Jeff decided that they were uncomfortable around her, and further explained that as a result, they canceled Plaintiff's application that morning prior to Plaintiff's arrival even though the background application was approved. Plaintiff then requested contact information for the corporate office, to which Ms. Anderson responded in the presence of other White customers "I don't

have to give your Arab ass anything! It's my prerogative!"

14. Plaintiff then stated that she would go to another Dick's store if she [Ms. Anderson] continued to refuse to provide her the requested corporate information and consummate the sell of the firearm given that she passed the background check. Ms. Anderson then responded "You can't! I've banned you from every Dick's in the state and told them not to sell you a gun!" Meanwhile, Ms. Anderson continued assisting other White customers who were present purchasing firearms."

*Legal Standard*

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In resolving a motion for judgment on the pleadings, the court must accept the non-movant's factual statements as true and draw all reasonable inferences in his favor. Rock for Life-UMBC v. Hrabowski, 594 F. Supp. 2d 598, 605 (D. Md. 2009); Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc., 932 F.3d 268, 274 (4th Cir. 2019). In resolving a motion for judgment on the pleadings, the court may rely on admitted facts in the pleadings, documents attached to the pleadings, a*nd facts contained in materials of which the court may take judicial notice*. Hartford Casualty Insurance Co. v. Gelshenen, 387 F. Supp. 3d 634 (W.D.N.C. 2019)(emphasis added).

*Legal Argument*

Defendant's argument against the validity of Plaintiff's IIED claim is silent with respect to a critical aspect of the analysis of the claim, namely, the authoritarian dynamic between the parties involved in the conduct at issue. Indeed, the extreme and outrageous character of the offender's conduct may be enhanced if such offending conduct arises from their abuse of a position, or relating with another person, which gives the offender actual or apparent authority over the complaining party, or power to affect the complaining party's interests. Mcpherson v. Baltimore Police Department, 494 F. Supp. 3d 269, 286 (D.Md. 2020).

In Mcpherson, the Court found that the Plaintiff had met the F.R.CP. 12(b)(6) standard for stating a IIED claim for relief that was plausible on its face given that the Defendants were police officers who used their authority to falsify evidence of Plaintiffs' participation in a homicide. While the Defendant's agents, servants, and employees involved in the instant case were not law enforcement officers, neither were they unknown strangers that Plaintiff interacted with on a casual occasion. They unquestionably had the power- and in fact utilized and abused such power- to affect Plaintiff's interests in the exercise of her lawful right to purchase and own a firearm. In cases where the Defendant is in a peculiar position to harass the plaintiff, and cause emotional distress, his [or her] conduct will be carefully scrutinized by the courts. Harris v. Jones, 380 A.2d 611 (1977)(citing F. Harper & F. James, Jr., *The Law of Torts* § 9.1, at 666-67 (1956); W. Prosser, *Law of Torts* § 12, at 56 (4th ed. 1971)).

To wit, the Harris court also referenced an example similar to this case with respect to the presence of verbalized discriminatory animus. The Harris court, in its exploration of whether extreme and outrageous character of a Defendant's conduct may arise from his abuse of a position or power to affect the Plaintiff's interests, found as follows:

> [I]n [Alcorn v. Anbro Engineering, Inc., 2 Cal.3d 493, 86 Cal. Rptr. 88, 468 P.2d 216 (1970)], the court referred to comment (e) of the Restatement, *supra*, § 46, *i.e.,* that the extreme and outrageous character of the defendant's conduct may arise from his abuse of a position, or relation with another person, which gives him actual or apparent authority over him, or power to affect his interests. In that case, the Supreme Court of California said that a plaintiff's status as an employee should entitle him to a greater degree of protection from insult and outrage than if he were a mere stranger. It there found an employer's conduct toward a black employee to be extreme and outrageous, and to support an action for intentional infliction of emotional distress where the employer, "standing in a position or relation of authority over plaintiff, aware of his particular susceptibility to emotional distress, and for the purpose of causing plaintiff to suffer such distress, intentionally humiliated plaintiff, insulted his race [by calling him a `nigger'], ignored his union status, and terminated his employment, all without just cause or provocation."

As this honorable Court is aware, the prima facie case for the tort of intentional infliction of emotional distress has four elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. Harris v Jones, 281 Md. 560, 566 (1977). Notably, in determining whether conduct is extreme and outrageous, it should not be considered in a sterile setting, detached from the surroundings in which it occurred. Harris at 569.

At this stage of the proceedings, according to the case law of this circuit, this Court may take judicial notice of the facts cited in footnote 1, specifically that "on June 20, 2021, nearly 70 percent of Indian American Muslim women reported experiences with discrimination, with discrimination based on skin color identified as the most common form of bias, based on the results of the Indian American Attitudes Survey, an empirical study based on a nationally representative online survey conducted in September 2020 of 1,200 Indian American residents in the United States. *See* Footnote 1 of Complaint; *see also* Hartford Casualty Insurance Co., *supra*.

Within this context, contrary to Defendant's argument, Plaintiff has satisfied the second element of "extreme and outrageous conduct." The "bounds of decency", even under the most liberal scrutiny, would not encompass and allow for racial and derogatory epitaphs being hurled at a business invitee in public on *two* consecutive occasions by an employee of the business in a position of actual authority with the ability to affect the interests of the invitee, including, as here, their personal safety. Plaintiff's Complaint specifically alleges that the conduct was engaged in by White employee of the Defendant, and that the conduct occurred in public view of other customers who did not share the same ethnicity of the Plaintiff. *See* Complaint at para. 13, 14. Defendant's motion does not cite to one single case that purports to hold or even suggest that

such behavior under these circumstances "simply must be endured as part of life," particularly in a geographic location with the fourth highest diversity index in the country. *See* Footnote 2; *see also* <u>Hartford Casualty Insurance Co.</u>, *supra*.

Furthermore, while Defendant attempts to subtly inject a notice requirement into the prima face case for this tort, there is no element requiring proof (or an allegation) that the Defendant knew about the complaining party's susceptibility to being emotionally distressed.

Finally, Defendant relies on this Court's reasoning utilized in <u>Hunter v. Snee</u> in support of their position that Plaintiff has not alleged the type of severe distress that would amount to an inability to function on a daily basis. *See* Def. Motion at p. 8. However, in that case, this Court found that the Plaintiff's allegations contained the phrases that the Plaintiff "[s]uffered serious, painful and possibly permanent bodily injuries, great physical pain and mental anguish, severe and substantial emotional distress and loss of the capacity for the enjoyment of life," and therefore Plaintiff's Complaint in this regard amounted to a legal conclusion. <u>Hunter</u>, *supra*.

Here, however, Plaintiff's Complaint cites to specific clinical diagnoses of disorders that are subject to the diagnosis criteria set forth in the Diagnostic and Statistical Manual of Mental Disorders (DSM), specifically anxiety, depression, and post traumatic stress. *See* Complaint at para. 16. Furthermore, Plaintiff's Complaint describes with specificity a type of severe distress that would amount to an inability to function on a daily basis, namely "*sleeplessness, panic, and fear*, and other emotional manifestations of the malicious and excessive humiliation by the Defendants' agents, servants, and employees." *See* Complaint at para. 19 (emphasis added). These specific manifestations of emotional harm are not a consequence of common daily interaction in any civilized society.

Plaintiff, therefore, has put forth facts to support a claim for Defendant's liability for IIED, and in that regard, Defendant's Motion shall be denied.

*Conclusion*

For the reasons set forth in this Opposition, Plaintiff respectfully request that Defendant's Motion be denied.

>Respectfully Submitted,
>
>Governor E. Jackson, III /s/
>Governor E. Jackson, III (Bar No. 27673)
>Law Office of Governor Jackson, III LLC
>400 E. Joppa Rd., Suite 50
>Towson, Maryland 21286
>(410) 528-5150/ (410) 528-1055 (f)
>gjackson@governorjacksonlaw.com
>
>*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2023, I served via ECF filing a copy of this Opposition to Defendant's Motion for Judgment on the Pleadings.

>Governor E. Jackson, III /s/